UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

STUDIO CENTER NEW YORK, LLC,

              Plaintiff,

v.                                  Case No.: 2:08cv340

ANTHONY ERICE,

              Defendant.

**STUDIO CENTER'S MEMORANDUM IN OPPOSITION TO DEFENDANT ANTHONY ERICE'S RULE 12(b)(6) MOTION TO DISMISS COUNTS ONE AND TWO OF PLAINTIFF'S COMPLAINT**

**I.    PRELIMINARY STATEMENT**

      Defendant Anthony Erice is a former employee of Plaintiff Studio Center New York, LLC ("Studio Center"). At the outset of his employment, Mr. Erice entered into a Confidential Information Invention Assignment and Non-Competition Agreement with Studio Center which prohibited a narrow range of post-employment competition with Studio Center as well as post-employment solicitation of Studio Center's customers. (Referred herein as "the Agreement," which is attached as Exhibit 1).

      Mr. Erice left Studio Center's employ on May 22, 2008. Within days, Studio Center learned that Mr. Erice was brazenly soliciting a number of Studio Center's major customers. Indeed, based on this solicitation, one of these customers canceled scheduled business with Studio Center. On May 30, 2008, counsel for Studio Center sent Mr. Erice a letter reminding him of his obligation not to solicit Studio Center's customers or compete with Studio Center in violation of the Agreement. Nevertheless, shortly after receiving Studio Center's cease and desist letter, Mr. Erice accepted employment with one of Studio Center's major competitors.

Mr. Erice admits that he has continued to work in a competitive capacity less than a mile from Studio Center's office.  He also admits that he has solicited and accepted business from numerous  Studio Center customers.  Notwithstanding his clear and admitted breach of the terms of the Agreement, Mr. Erice asks the Court to disregard the relevant facts of this case, and to dismiss Counts I and II of Studio Center's case based on the alleged *per se* unenforceability of the Agreement.   However, Mr. Erice's premise that the restrictions are overbroad and unreasonable overlooks important language in the Agreement that narrows the scope of each restriction.  Furthermore, Mr. Erice improperly bases his argument for dismissal on alleged facts not before the Court and unsupported hypotheticals about what the Agreement might (in Mr. Erice's opinion) prohibit.  By asserting his incorrect belief that the Agreement would prohibit him from working in positions that do not compete with Studio Center, Mr. Erice attempts to deflect attention from the admitted fact that he is actually competing in a similar position and soliciting customers *less than one mile* from the office in which he worked for Studio Center.

Counts I and II of Studio Center's Complaint are based on four restrictive covenants which are each narrowly tailored  to protect Studio Center's legitimate protectable interests.  Each of these provisions is enforceable and certainly not *facially* overbroad such that they are appropriate for dismissal under the 12(b)(6) standard.

First , Count I of Studio Center's Complaint is based on three separate non-solicitation covenants contained in paragraphs 4(a)(i-iii) of the Agreement.  Each of these covenants is narrowly tailored to protect Studio Center's customer relationships and its confidential information related to these customers.  Indeed, each of these covenants is significantly less broad than non-solicitation provisions upheld by numerous Virginia state and federal courts.

I-857074.2

Likewise, the non-competition provision (Paragraph 4(b)) upon which Count II is based is narrowly tailored to protect Studio Center's interest in its confidential information, its goodwill and its relationships with customers and talent providers. The non-competition provision only prohibits Mr. Erice from accepting directly competitive business involving "the same or similar" services as he performed for Studio Center. Moreover, it only prohibits Mr. Erice from working in positions which would actually "compete" with Studio Center. Finally, these narrow provisions last for only one year. Despite the narrow scope of the Agreement, Mr. Erice incorrectly argues that the non-competition provision would prohibit him from working anywhere in the world in unrelated provisions, and therefore is facially overbroad. This argument ignores the plain language of the Agreement, misstates Virginia law, and depends on Mr. Erice's allegations of disputed facts that are not before the Court and not appropriate for a 12(b)(6) motion.

For these reasons, which will be discussed more fully in this Memorandum, Mr. Erice's Motion to Dismiss should be denied.[1]

## II.   STATEMENT OF RELEVANT FACTS

1.     Mr. Erice is a former employee of Tonic Digital Audio, L.L.C ("Tonic"). In December 2007, Studio Center purchased substantially all of Tonic's assets, including its goodwill, its going concern value, and other tangible and intangible assets including its customer relationships. On or about December 17, 2007, Studio Center offered continued employment to Mr. Erice as a producer. (Verified Complaint at ¶¶ 8-9, 18).

---

[1] Moreover, as will be discussed in Section III(B)(5) below, even if Mr. Erice could somehow demonstrate that one of the four independent restrictive covenants is facially overbroad, such allegedly overbroad provisions would be severed from the Agreement leaving the remainder of the Agreement in full force, pursuant to the Agreement's clear severability provision. (See Exhibit 1 at ¶ 13).

2.     Both Tonic and its successor Studio Center provided Mr. Erice with training, exposed him to confidential information including customer lists and pricing information, exposed him to their marketing strategies, and granted Mr. Erice direct access to their customers and other contacts. (Id. at ¶¶17-18). Studio Center dedicates substantial resources to the development of its clientele, and takes affirmative steps to protect its confidential information related to its business and its customers. (Id. at ¶ 20).

3.     In order to protect its confidential information and customer relationships, Studio Center requires all producers to sign agreements restricting competition. In its offer letter to Mr. Erice, Studio Center informed him that he would be required to sign such an agreement. Id. at ¶ 9.

4.     On or about December 20, 2007, Mr. Erice entered into the Agreement with Studio Center. Mr. Erice agreed the Agreement was necessary because "During the course of his employment, he will acquire proprietary and confidential information about the Company's business including . . . its customers, vendors, voice talent, pricing, sales strategies and other information" and because he would have "a special relationship with the Company's customers and talent." (Exhibit 1 at ¶ 4).

5.     Mr. Erice also agreed that, for a period of two years after his last day of employment, he would not solicit or accept business from three distinct subsets of Studio Center's customers. Specifically, he agreed he would not "compete with the company by:"

- Soliciting or accepting competing business from any person or entity who or which was a customer of the Company on the last day of Employee's employment and/or during the 24-month period prior thereto, from whom or which the Company solicited or accepted business; or  (Exhibit 1 at ¶ 4(a)(i))

- Soliciting or accepting competing business from any person or entity who or which was a customer of the  Company on the last day of Employee's employment and/or during the 24-month period prior thereto about whom or which Employee acquired proprietary and/or confidential information while employed that is material to the Company's business interests; or  (Exhibit 1 at ¶ 4(a)(ii))

4

- Soliciting or accepting competing business from any person or entity from who or which Employee solicited business during the 6-month period immediately preceding the last day of Employee's employment, even though such solicitation may not have yet been successful.   (Exhibit 1 at ¶ 4(a)(iii))

6. Likewise, as part of the Agreement, Mr. Erice agreed that he would not compete with Studio Center for a one year period by working for a competitor in a capacity that involved the same or similar duties as he performed for Studio Center.  Specifically, Erice agreed that:

> For twelve (12) months following the last day of employment, Employee will not compete with the Company by accepting employment with any competitor of the Company in a position ("Competitive Position") **that is the same or similar to the duties held by Employee with the Company**.  For purposes of this subsection, Competitive Position means any administrative, talent recruitment, scheduling or managerial position **involving such activities**.  (Exhibit 1 at ¶ 4(b) (emphasis added).

7. After Mr. Erice entered into the Agreement, Studio Center  provided him with access to customers and confidential information related to Studio Center and its parent company and affiliates.  (Verified Complaint at ¶¶ 7, 17).

8. On May 22, 2008, Mr. Erice's employment with Studio Center ended.  (Id. at ¶ 21). He immediately began breaching all three non-solicitation covenants contained in Agreement paragraph 4(a) by soliciting and accepting business from Studio Center customers including but not limited to Fred Weinberg and the Field.  This continued solicitation of Studio Center's customers in breach of all three non-solicitation provisions has caused significant damage to Studio Center.  (Id  at ¶¶ 26-30, 41-43; Mr. Erice's Answer to Complaint at ¶¶ 26, 27, 61).

9. Shortly after his employment with Studio Center ended, Mr. Erice accepted employment with a direct competitor of Studio Center, Howard Schwartz Recording.  Mr. Erice admits he is performing duties for Howard Schwartz that are the same as or similar to the duties that he performed for Studio Center.  Thus, Mr. Erice's employment is in direct breach of paragraph 4(b) of the Agreement.  This competition has caused substantial damage to Studio Center.  (Id. at ¶¶ 30-31; 45-50; Mr. Erice's Answer at ¶¶ 31-32).

## III.  LEGAL ARGUMENT

### A.  Motion to Dismiss Standard

In reviewing a Rule 12(b)(6) Motion to Dismiss, a court must accept all allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff.  A court may <u>not</u> consider matters outside of the pleadings when ruling on a Motion to Dismiss. <u>Shoemaker v. Metro Info. Servs.</u>, 910 F. Supp 259 (E.D. Va 1996), <u>See</u> <u>Also</u> <u>Adams v. Bain</u>, 697 F.2d 1213 (4th Cir. 1982).  Furthermore, a Motion to Dismiss must be assessed in light of the Federal Rules of Civil Procedure's liberal pleading standards.  Therefore, to survive a Motion to Dismiss, the Complaint need only state sufficient facts to enable the defendant to draft a responsive pleading.  <u>Jetform Corp. v. Unisys Corp.</u>, 11 F. Supp. 2d 788 (E.D. Va 1998).

Because of this liberal standard, a Court should not dismiss a Complaint "unless it appears beyond doubt that the plaintiffs can prove **no** set of facts in support of their claim which would entitle them to relief.  A court should not dismiss a complaint even if it appears on the face of the pleadings that the chance of recovery is very remote." <u>Higgins v. Medical College of Hampton Roads</u>, 849 F. Supp. 1113, 1117 (E.D. Va. 1994).  <u>See</u> <u>Also</u> <u>Adams</u>, 697 F.2d at 1215.

Under this liberal standard, it is important to note that the question of whether restrictive covenants are enforceable depends upon the facts in each particular case.  <u>Blue Ridge Anesthesia & Critical Care v. Gidick</u>, 239 Va. 369, 792; 389 S.E.2d. 467 (1990)  Indeed, "the law in Virginia is well settled that the enforceability of a restrictive covenant or a non-competition provision in an employment agreement is generally fact specific."  <u>Auto-Chlor Systems of Northern Virginia, Inc. v. Church</u> 53 Va. Cir. 295, 207; (Norfolk Cir. Ct. 2000).  Each restrictive covenant "must be evaluated on its own merits, balancing the provisions of the contract with the circumstances of the businesses and employees involved." <u>Omniplex World Servs. Corp. v. US Investigations Servs., Inc.</u>, 270 Va. 246, 249, 618 S.E.2d 340, 342 (2005).  Thus, the same contractual language may be

enforceable under one set of facts, while unenforceable under another.  For example, while

Burger King may *not* have a protectable interest in prohibiting a short order cook from competing

by working at Wendy's, a five-star fine dining restaurant may very well have an enforceable

interest in prohibiting its well known chef from working for a competing restaurant across the

street.  Id.

     As courts have routinely stated, "when evaluating the enforceability of a restrictive

covenant in the context of a Rule 12(b)(6) motion, the court's review is limited to the complaint

and any properly referenced documents, and may not extend to extrinsic factual evidence."

Combined Ins. Co. of America v. Wiest  578 F. Supp. 2d 822, 828, (W.D. Va.,2008).  Thus, what

is so clearly fatal to Mr. Erice's Motion to Dismiss is that virtually his entire argument depends

on facts outside of the pleadings concerning the alleged scope of Studio Center's business and its

protectable interests.  At the appropriate time, Studio Center will easily be able to establish facts

demonstrating that it has a protectable interest in each restrictive covenant contained in the

Agreement and that these covenants are reasonably tailored to protect these interests.   However,

for purposes of Mr. Erice's 12(b)(6) Motion, the relevant question is whether there is **no possible**

**set of facts** under which Studio Center could prove the enforceability of the restrictive covenants

in the Agreement.  Higgins 849 F. Supp. at 1117.  Mr. Erice has not met this high burden.

    **B.**   **Studio Center Has Stated a Valid Breach of Contract Claim**

        **1.**   **Studio Center Has Sufficiently Alleged All Necessary Elements of a Breach of Contract Claim**

     Count I and II of Studio Center's Complaint both state valid causes of action for breach of

an employment contract.  To plead a valid breach of contract claim, Studio Center need only

allege that (1) Mr. Erice had a legal obligation to Studio Center (2) Mr. Erice breached that

obligation or obligations, and (3) this breach caused a consequential injury or damage to Studio

7

Center.  Hamlet vs. Hayes, 273 Va. 437, 442, 641 S.E.2d 115 (2007).  Studio Center has alleged

and Mr. Erice has admitted that he is in breach of the Agreement because he is working for a

competitor in a similar capacity and because he has solicited Studio Center's protected customers.

Moreover, Studio Center has clearly pled that it has suffered damages as a result of Mr. Erice's

breach.  (See Verified Complaint at ¶¶ 26-32, 41-44, 46-50; 61; Mr. Erice's Answer to Complaint

at ¶¶ 26, 27, 29, 30, 31, 61).  Thus, the only remaining question for purposes of Mr. Erice's

12(b)(6) Motion is whether the non-solicitation and non-competition covenants upon which

Counts I and II are based are each *per se* facially unenforceable as a matter of law.  Put another

way, Mr. Erice must establish that there is literally no set of facts under which any of the

Agreement's provisions could be enforceable.  Higgins, 849 F. Supp. at 1117.

### 2.   Standard Applicable To Restrictive Covenants

In assessing the enforceability of restrictive covenants such as the non-solicitation

clauses and the non-competition clause at issue in this case, Courts applying Virginia law use a

three part test:

> (1)  Is the restraint, from the standpoint of the employer, reasonable in the
> sense that it is no greater than necessary to protect the employer in some
> legitimate business interest?;
>
> (2)  Is the restraint, from the standpoint of the employee, reasonable in the
> sense that it is not unduly harsh or oppressive in curtailing his legitimate
> efforts to earn a livelihood?;  and
>
> (3)  Is the restraint reasonable from the standpoint of public policy?
> Advanced Marine Enterprises, Inc. v. PRC Inc., 256 Va. 106, 118, 501
> S.E.2d 148, 144 (1998); Meissel v. Finley, 198 Va. 577, 580, 95 S.E.2d 186
> (1956).

The Supreme Court of Virginia has noted that "[n]oncompetition covenants which pass

these tests in the light of the facts of each case will be enforced in equity." Blue Ridge, 239 Va. at

372.  Reasonable restrictive covenants are justified and enforceable where the employee is

8

exposed to confidential information or where "the employee comes into personal contact with his employer's customers." Paramount Termite Control Co. v. Rector, 238 Va. 171, 175, 380 S.E.2d 922, 925 (1989).  Studio Center granted Mr. Erice access both to Studio Center's confidential information and its customers, as well as to confidential information concerning its affiliates and parent company.   (Verified Complaint at ¶¶ 7, 13, 17).

In applying the above test, courts often look at a combination of factors including the reasonableness of the covenant's temporal scope, functional scope, and geographic scope.  New River Media Group, Inc. Knighton, 245 Va. 367, 429 S.E.2d 25 (1993).  After reviewing the combination of all these factors, the court must ultimately determine if the covenant is drafted in a reasonable manner to protect the plaintiff's protectable interests.  Zuccari, Inc. v. Adams, 42 Va. Cir. 132, (Va. Cir. 1997) (noting that the ultimate questions is whether a restrictive covenant is reasonable under the circumstances).

### 3.   The Three Non-Solicitation Provisions are Each Enforceable

### a.   Each Non-Solicitation Covenant is Temporally Reasonable

Count I of Studio Center's Complaint alleges that Mr. Erice has violated each of three independent non-solicitation covenants contained at paragraphs 4(a)(i-iii) of the Agreement. Each of these provisions prohibits Mr. Erice, *for a two year period*, from soliciting or accepting competing business from a specified subset of Studio Center's customers.  The non-solicitation provisions do not prohibit Mr. Erice from working for a competitor in the industry, but instead more narrowly prohibit him from soliciting certain of Studio Center's customers.

Mr. Erice does not even attempt to argue that the non-solicitation provisions' two-year prohibition is overbroad or unreasonable in terms of their temporal scope.  This is not surprising because Virginia courts routinely enforce even broader restrictive covenants for two years or more.  See Paramount Termite Control Co. v. Rector, 238 Va. 171, 175, 380 S.E.2d 922, 925

9

I-857074.2

(1989) (upholding a five year non-competition restriction); <u>Fish v. Collins</u> 9 Va. Cir. 64 (Fredericksburg, 1987) (permitting a five year restriction), <u>Zuccari,</u> 42 Va. Cir. at 134 (five year non-solicitation enforceable worldwide); <u>McKeever Associates v. Giuseppe McKeever Associates,</u> 1992 WL 885059, 3 (Va. Cir. Ct. 1992) (worldwide non-solicitation with three year temporal limitation found reasonable).

**b.** **<u>Each Non-Solicitation Covenant is Reasonable in Terms of Geographic Scope</u>**

While Mr. Erice essentially concedes that paragraph 4(a)'s non-solicitation provisions are temporally reasonable, he nevertheless argues that all three non-solicitation provisions are unenforceable because of their lack of a specific geographic limitation.  However, Virginia courts have been consistent in holding that a non-solicitation which is otherwise reasonably tailored need not have a specific geographic limitation. <u>See</u> <u>Foti v. Cook,</u> 220 Va. 800, 263 S.E.2d 430 (1980) (enforcing geographically unlimited non-solicitation clause because it only prohibited solicitation of clients); <u>Zuccari,</u> 42 Va. Cir. at 133 (five year non-solicitation enforceable worldwide because it only prohibited the employee from soliciting customers); <u>Thomas Rutherfood, Inc. v. Cooley,</u> 2008 WL 544848, * 7 (W.D.N.C. 2008) (holding that Virginia law does <u>not</u> require geographic limitations for non-solicitation clauses, and that such a provision could not be dismissed on a Motion to Dismiss); <u>Leddy v. Communication Consultants, Inc.,</u> 51 Va. Cir. 467, 469 (Va. Beach Cir. Ct. 2000) (non-solicitation clause need <u>not</u> have geographic limitations); <u>McKeever Associates v. Giuseppe McKeever Associates,</u> 1992 WL 885059, 3 (Va. Cir. Ct. 1992) (worldwide non-solicitation with three year temporal limitation found reasonable).

Each of the above cited cases recognize that a business is damaged by the theft of customers no matter where this occurs, and that in many industries a former employee can successfully misappropriate customers from any location.  This is especially true in an industry

such as Studio Center's in which the entire scope of work for customers can be done remotely via the internet or over a specialized phone system with direct access to the recording talent.  Indeed even Mr. Erice admitted during his deposition that "there are no walls" in the industry anymore because of modern technology, and that he often performs his job without ever meeting the customer face-to-face.  Thus adding a geographic limitation would render the non-solicitation provisions meaningless because it would not be reasonably tailored to Studio Center's business and Mr. Erice would be able to service Studio Center's customers from an area outside of any specific geographic limitation.

These types of facts not only demonstrate that the non-solicitation provisions are appropriately tailored to protect Studio Center's interests in its customers, contacts, and confidential information, but also that Mr. Erice cannot even argue for dismissal of the non-solicitation provisions without resorting to alleged facts *outside of the scope of Studio Center's Complaint.*  A ruling on the enforceability of the restrictive covenants, must be based on assessment of numerous facts about the type and scope of Studio Center's business, the way the industry works, and the manner in which Mr. Erice could otherwise exploit Studio Center's resources to gain an unfair competitive advantage and misappropriate customers.

Based on the foregoing, it is not surprising that the primary case relied upon by Mr. Erice for the proposition that a *non-solicitation* provision could be unenforceable based solely on its geographic breadth is easily distinguishable.  First, Phoenix Renovation Corp. v. Rodriguez, 439 F. Supp. 2d 510, 521 (E.D. Va. 2006) came before the court on a *motion for summary judgment*, not on a Motion to Dismiss.  Thus, the court was able to base its decision on facts about the scope of Phoenix's business which were outside of the pleadings, such as the number of Phoenix's offices and the scope of the work the defendants performed on behalf of Phoenix. Id.

I-857074.2

Moreover, a close reading of the case demonstrates that the covenant in <u>Phoenix</u> was declared unenforceable because of the overbreadth of the term "customers," not solely because of the asserted geographic overbreadth. Unlike the non-solicitation provisions involved in this case, the agreement in <u>Phoenix</u> prevented the defendants from soliciting or serving any "present ***or prospective customer*** or client of the Company."  The Court interpreted this provision to mean that the defendants were not just prohibited from servicing companies that actually had done business with Phoenix, but also from working with any company who even *had the potential* of becoming a customer of Phoenix.  This broad non-solicitation provision was further exacerbated by the fact that the defendants, who were plumbing subcontractors, had only performed plumbing work for clients in one state of the thirty-eight that Phoenix serviced.  Thus, the Court ruled that Phoenix had no protectable interest in prohibiting the defendants from soliciting *potential* customers in 38 states.  <u>Id.</u> at 521.

### c.    Non-Solicitation Paragraph 4(a)(iii) Is Independently Enforceable

In his Memorandum in Support of his Motion to Dismiss, Mr. Erice does not even attempt to make any specific arguments regarding alleged unenforceability of non-solicitation paragraph 4(a)(iii).  This is not surprising because it is hard to imagine a more narrowly tailored provision.  In paragraph 4(a)(iii), Mr. Erice agreed that:

> …For twenty-four (24) following the last day of employment, Employee will not compete with the Company by: Soliciting or accepting competing business from any person or entity from who or which **Employee** solicited business during the 6-month period immediately preceding the last day of Employee's employment, even though such solicitation may not yet have been successful.  (emphasis added)

Furthermore, in paragraph 4(c) the Agreement clearly provides that Mr. Erice is only prohibited from soliciting such clients for business "regarding the same or similar products or services Employee sold, traded in, managed or provided. . . while employed by the Company."

Thus, in combination, under paragraph 4(a)(iii), Mr. Erice is only prohibited from

12

engaging in competing business with the very same clients that he *personally solicited* during the last six months of his employment with Studio Center.  Moreover, he is only prohibited from soliciting these clients for business that is the same or similar to the business he performed for Studio Center.  Such a narrowly tailored provision is enforceable under Virginia law, which recognizes a business' right to protect the clients with whom an employee worked.  See Zuccari 42 Va. Cir. at 133 ( A business "should be able to protect its client base from former employees who may leave its employ but continue in the same line of business.")  See also Paramount Termite, 238 Va. at 175, 380 S.E.2d  at 925.

Studio Center exposed Mr. Erice to pricing information and other confidential information concerning its clients and its voice talent.  (Verified Complaint at ¶ 17).  After soliciting clients on behalf of Studio Center in the last six months of his employment, it would be remarkably easy for Mr. Erice to use Studio Center's confidential information concerning pricing and upcoming projects to attempt to undercut Studio Center with these same clients, and paragraph 4(a)(iii) is clearly an extremely narrow way to avoid this negative result.

Indeed, a business's customer relationships and confidential information are so obviously an important protectable interest, that numerous courts have approved the use of non-solicitation provisions which are much broader than the extremely narrow provision contained in paragraph 4(a)(iii).  For example, in Foti v. Cook, 220 Va. at 806-07,  the Virginia Supreme Court enforced a geographically unlimited non-solicitation provision, which prohibited the defendant from soliciting "*any* client" of a large accounting firm for a period of two years.  Thus, the defendant in Foti was prohibited from soliciting the company's clients regardless of whether he worked with or knew about those clients, and regardless of whether the defendant had ever personally solicited each client.  Id.  On the other hand, paragraph 4(a)(iii) only applies to customers who or which

13

Mr. Erice *personally* solicited on behalf of Studio Center, and only those he solicited in the last six months of his employment.  See also <u>Advanced Marine Enterprises, Inc. v. PRC, Inc.</u> 256 Va. 106, 501 S.E.2d 148 (1998) (in which the Virginia Supreme Court enforced a non-solicitation covenant which prohibited the former employee from working with any customer with whom he worked  regardless of when he worked with the client and even though he was prohibited from doing so within 50 miles of any of the company's 300 offices); <u>Combined Ins. Co. of America v.</u> <u>Wiest</u>  578 F. Supp. 2d 822, 828, (W.D. Va. 2008) (refusing to strike down a non-solicitation which prohibited the solicitation of *any client* of a international insurance company, regardless of whether the employee had contact with those clients).

Paragraph 4(a)(iii) thus passes Virginia's test for enforceability of restrictive covenants.  It is reasonable in its temporal scope in that it only last two years, its functional scope in that it only prohibits solicitation for competitive business that is the same or similar to the duties performed by Erice as an employee of Studio Center, and geographically because it only protects customers, not general competition.  Indeed, the provision only protects the very customers about whom Erice is most likely to have sensitive, confidential or proprietary information; those he personally solicited in the last six months of his employment.  Furthermore, this provision does not curb Erice's ability to earn a livelihood, as it only prohibits him from working with a small subset of customers for a short period of time.  Finally because this provision is so obviously narrowly tailored to protect Studio Center's confidential information, public policy favors its enforcement. See <u>Meissel</u> 198 Va. at 584, 95 S.E.2d at 191; <u>Shuttleworth, Ruloff and Giordano, P.C. v. Nutter</u>, 254 Va. 494, 498, 493 S.E.2d 364, 366 (1997).

### d.   Non-Solicitation Paragraph 4(a)(ii) is Enforceable

For many of the same reasons, paragraph 4(a)(ii) is also independently enforceable as it is narrowly tailored to protect Studio Center's legitimate interests.  In paragraph 4(a)(ii), Mr. Erice agreed that:

> for twenty-four (24) following the last day of employment, Employee will not compete with the Company by: Soliciting or accepting competing business from any person or entity who or which was a customer of the Company on the last day of Employee's employment and/or during the 24-month period prior thereto, **about whom or which Employee acquired proprietary and/or confidential information while employed that is material to the Company's business interests. (**emphasis added)

As with paragraph 4(a)(iii), pursuant to paragraph 4(c), paragraph 4(a)(ii) only prohibits Mr. Erice from soliciting these customers for work that is the same or similar to that which he performed while employed at Studio Center.

The plain language of this covenant demonstrates that it is narrowly tailored to protect only those customers about which Mr. Erice actually obtained important confidential information. Studio Center has alleged that Mr. Erice had access to such confidential information, including pricing information.  (Verified Complaint at ¶¶ 17, 39).  There is significant danger that an employee could use confidential information about a customer (including pricing and upcoming projects) to unfairly undercut Studio Center's position with that customer.  Paragraph 4(a)(ii) is narrowly tailored to protect against this and similar improper use of confidential information, and to give Studio Center a short period to solidify its relationship with any customers about whom Mr. Erice had important confidential information.

Courts have clearly held that both a company's customer relationships and its confidential information are protectable interests.  See Paramount Termite, 238 Va. at 175, 380 S.E.2d at 925; Roanoke Engineering v. Rosenbaum, 223 Va. 548, 290 S.E.2d 882 (1982) (enforcing a broad

15

non-compete because the former employee had access to confidential financial records, customer lists, and pricing policies.)

Moreover, courts have upheld much broader non-solicitation provisions which support these protectable interests.  Indeed, numerous courts have upheld non-solicitation provisions which were not limited to customers about whom the employee acquired confidential information. See Wiest, 578 F. Supp. 2d at 828 (upholding a non-solicitation that prohibited the employee from soliciting *any* of the plaintiff's clients, even though the plaintiff was a large international insurance company and the defendant did not know all of its clients); Foti 220 Va. at 806-07 (enforcing a worldwide non-solicitation that prohibited solicitation of *any* of the company's customers regardless of whether the defendant was exposed to confidential information regarding these customers); Leddy v. Comm. Consultants, Inc., 2000 WL 33259906 at *3 (Va. Cir. Ct. Apr. 5, 2000) (upholding a worldwide non-solicitation provision which prohibited the employee from servicing any customer of the company if the employee had mere *access* to information concerning business dealings with the customer).

It is clear that Virginia courts uphold non-solicitation provisions based solely on the fact that an employee *might have* acquired confidential information about a customer.  Therefore, Studio Center's more narrow provision which only applies if Mr. Erice *actually acquired* confidential information is enforceable under Virginia law.

These cases demonstrate that Virginia courts have upheld non-solicitation covenants which applied to customers about whom the employee even had *access* to *any* confidential information, which is broader than the covenant at issue in the present case.  Mr. Erice argues that paragraph 4(a)(ii) is rendered ambiguous and unenforceable because it only applies if the confidential information to which Mr. Erice was exposed was "**material**" to Studio Center's

16

business interest.  (See Def. Memo in Support at pgs 14-15).  Mr. Erice disingenuously argues

that the meaning of this common term is unknowable thus creating an *in terrorem* effect, in which

Mr. Erice does not know what is and what is not prohibited.  What makes this argument so

meritless is the fact that the plain meaning of the term "material" actually serves to *narrow* the

number of customers to whom the provision applies.

      Studio Center could have merely provided that Mr. Erice could not solicit *any* customers

of Studio Center if he even had access to *any* confidential information concerning those

customers.  Such a provision would clearly have been enforceable under the Virginia cases cited

above.  Instead, Studio Center limited its provision even further, so that it only applied if Mr.

Erice actually *acquired* confidential information, and only if this information was *material* to the

Company's business interests.

      Mr. Erice's attempts to attack the term "material" by listing a number of things the word

*could* mean, in his opinion.  However, almost every word in any contract could be scrutinized in

such an irrelevant manner.  However, Mr. Erice need only look at a dictionary to know exactly

what the Agreement means by the term "material."  According to the Random House Dictionary

of the English Language, "material" is defined as "of substantial import, of much consequence,

important."  This term is obviously included to narrow the scope of paragraph 4(a)(ii) so that  any

*unimportant* information would not trigger paragraph 4(a)(ii)'s protections.  On the other hand, if

Mr. Erice acquired information about Studio Center's pricing structure for a customer, or the

customer's future work schedule, such "important" information *would* trigger the protections of

the provision, because such important information could give Mr. Erice an unfair advantage in

soliciting this customer.  Studio Center's inclusion of a commonly understood term which clearly

serves to limit and not expand the Agreement does not create the kind of alleged ambiguity necessary to render a provision unenforceable.

Thus paragraph 4(a)(ii) passes the three part test for enforceability under Virginia law.  It is narrowly tailored to protect Studio Center's interest in its customer relationships and its material confidential information about these relationships.  It is not unduly harsh in limiting Mr. Erice's ability to earn a livelihood because it only prohibits solicitation of a small subset of customers about whom Mr. Erice had actual material confidential information.  Finally it does not violate public policy because it is based on the sound rationale of protecting a customer base for a reasonable period of time.  See Zuccari, 42 Va. Cir. at 133 (1997); Shuttleworth, 254 Va. at 498, 493 S.E.2d at 366.

### e.   Non-Solicitation Paragraph 4(a)(i) is Enforceable

Likewise, paragraph 4(a)(i) is narrowly tailored to protect Studio Center's customer relationships and is therefore enforceable.  In paragraph 4(a)(i), Mr. Erice agreed that for a 24 month period following his last day of employment with Studio Center, he would not "compete with the company" by:

> Soliciting or accepting competing business from any person or entity who or which was a customer of the Company on the last day of Employee's employment and/or during the 24-month period prior thereto, from whom or which the Company solicited or accepted business.

As with paragraphs 4(a)(iii) and 4(a)(ii), pursuant to paragraph 4(c), paragraph 4(a)(i) only prohibits Mr. Erice from soliciting these companies for work that is the same or similar to that performed by Mr. Erice while employed at Studio Center.

Studio Center exposed Mr. Erice to confidential information, including customer lists, talent lists, and pricing information regarding Studio Center's customers and those of Studio Center's affiliates.  (Complaint at ¶¶ 7, 17).  The plain language of this covenant demonstrates that

it is narrowly tailored to protect its most important customers, those with whom Studio Center

had continued to do business during the last two years.[2]  As previously mentioned, numerous

courts have upheld provisions that prohibited the solicitation of *all* of a company's customers.

See Wiest  578 F. Supp. 2d at 828; Foti 220 Va. at 806-07.

Nevertheless, Mr. Erice argues that even this more limited non-solicitation provision

should be considered unenforceable because it applies to customers about which Mr. Erice might

not be aware and with whom he did not have contact.[3]  However, the entire point of non-

solicitation provisions is to protect customers and confidential information related to those

customers.  There is significant risk that an employee who is exposed to company wide

confidential information about customers could use that information to solicit these customers,

while claiming untruthfully that he was not aware that certain entities were customers of his

former employer.

Indeed, for this reason, Mr. Erice's identical argument was recently rejected by a Federal

District Court applying Virginia law.  In Wiest, 578 F. Supp. 2d at 828, the defendant was

employed by an international insurance company.  After the end of the employee's employment,

the insurance company sued alleging that defendant had violated a non-solicitation agreement.

Like Mr. Erice, the employee in Wiest argued that the agreement was unreasonable and

unenforceable because the company "did not provide [him] upon his termination any list of

policyholders to assist [him] in complying with this non-compete provision," and therefore, he

---

[2] Mr. Erice makes much of the fact that he was not an employee of Studio Center prior to December 2007.  However, Studio Center acquired Mr. Erice's prior employer, Tonic, including its goodwill, its going concern value, and its client relationships in December 2007.

[3] It is worth noting that despite Mr. Erice's reliance on such extreme hypotheticals in his brief, this lawsuit is based on the undisputed fact that he is currently soliciting and accepting business from the *very same clients that he worked with while employed at Studio Center,* and from an office less than one mile away.

could not "sell insurance… without fear of 'violating' the contract, because, without a list of Combined policyholders, he cannot know if the door upon which he knocks belongs to a Combined policyholder."  The court rejected the defendant's argument, citing to <u>Foti</u> and <u>Zuccari</u> for the proposition that Virginia courts uphold non-solicitation "clauses that are limited to a **former employer's actual customers**." <u>Id.</u>

The Plaintiff in <u>Wiest</u>  argued that the defendant was a large international insurance company with countless customers.  Nevertheless, the court refused to find the contract ambiguous or otherwise unenforceable.  Studio Center is a much smaller company in a much more specialized industry.  Mr. Erice's compliance with his Agreement would not be more burdensome than the employee's compliance in the <u>Wiest</u> case would have been.  And once again, Mr. Erice's argument depends on alleged facts outside of the pleadings.  Thus, Mr. Erice's argument concerning his lack of knowledge of the identity of all Studio Center's customers is without merit, and, like the previous paragraphs, paragraph 4(a)(i) is enforceable.

### 4.    The Non-Competition Provision is Enforceable

Mr. Erice also claims that the non-competition covenant contained in paragraph 4(b) of the Agreement is unenforceable on its face.  In so arguing, Mr. Erice has once again ignored the Motion to Dismiss standard under which he brought this motion as well as clear Virginia authority.  In paragraph 4(b), Mr. Erice agreed that:

> For twelve (12) months following the last day of employment, Employee will not compete with the Company by accepting employment with any competitor of the Company in a position ("Competitive Position") that is the same or similar to the duties held by Employee with the Company.  For purposes of this subsection, Competitive Position means any administrative, talent recruitment, scheduling or managerial position involving such activities.

Under the plain  language of the Agreement, this provision narrowly prohibits Mr. Erice from **competing** by accepting a position with a **competitor** of Studio Center which involves "**the**

**same or similar duties**" as Mr. Erice performed for Studio Center.  Thus Mr. Erice can work for a business which does not compete with Studio Center in *any* capacity he chooses (including the same capacity in which he worked for Studio Center). Moreover, he can even work for a  business which does compete with Studio Center as long as he does not work in a position which involves the same or similar duties as he held for Studio Center.

As with the non-solicitation provisions, the non-compete is narrowly tailored to protect Studio Center's legitimate protectable interests in its confidential information, it customers and contacts, its market data, and its goodwill.

      a.    <u>The Non-Competition Provision is Narrowly Tailored to Protect Legitimate Interests</u>

           i.        *The Non-Compete is Narrowly Tailored in Terms Of Its Temporal Limitation*

As with the non-solicitation provisions, Mr. Erice does not even attempt to argue that the non-competition provision is temporally overbroad.  In fact, the short one year prohibition on competition is much shorter than many broader provisions upheld by the Virginia courts. (<u>See</u> cases cited on pg. 9 above).

           ii.       *The Non-Compete is Narrowly Tailored in Terms of Its Functional Scope*

Mr. Erice ignores the plain language of the Agreement by arguing that paragraph 4(b) is functionally overbroad because it allegedly would prohibit him from working for a competitor in capacities unrelated to the duties he performed for Studio Center.  As previously mentioned, paragraph 4(b) has two narrowing phrases.  First, Mr. Erice is only prohibited from "competing" by "accepting employment with any *competitor* of the Company."  Second, Mr. Erice is only prohibited from working for such competitors "in a position ('Competitive Position') that **is the same or similar to the duties held by Employee with the Company**."  Nevertheless, Mr. Erice

21

points to a subsequent phrase which states, "For purposes of this subsection, Competitive Position means any administrative, talent recruitment, scheduling or managerial position **involving such activities,**" to argue that the provision is overbroad.

In his argument, Mr. Erice completely ignores these final three words (and the previous sentence) to disingenuously argue that paragraph 4(b) would prohibit him from working as a "chief financial officer" or a "human resources manager."  However, the plain language of the Agreement is clear that Mr. Erice is only prohibited from working in a managerial or administrative position if the position **involves** duties that are "the same or similar to the duties held by" Mr. Erice while employed by Studio Center.  Thus, Mr. Erice is only prohibited from performing for a competitor the same or similar duties as those he performed for Studio Center, regardless of what title the competitor gives him.  This provision is obviously intended to protect against the very real possibility that an employee would simply change his title or slightly change his job responsibilities to try to get around the covenant, while exploiting Studio Center's protected information and relationships to gain an unfair advantage in competing with the Company.

As the language of the contract demonstrates, Mr. Erice is not, therefore, prohibited from working in some unrelated capacity.[4]  He is merely prohibited from working for an actual "competitor" of Studio Center in a competing capacity that involves the same or similar duties to those which Mr. Erice had while employed by Studio Center.   Virginia law clearly provides that such a provision is both reasonable and enforceable.  See Blue Ridge Anesthesia & Critical Care v. Gidick, 239 Va. 369, 389 S.E.2d. 467 (1990) (non-competition provision enforceable because it did not forbid the employee from working in *any* capacity in the industry, but only in an aspect

---

[4] In addition, Mr. Erice's argument depends on establishing facts outside of the pleadings concerning exactly what Mr. Erice's duties were at Studio Center.

which would compete with the employer); <u>Auto-Chlor Sys. of No. Virginia, Inc. v. Church</u>, 53 Va. Cir. 295, 297 (Norfolk Cir. 2000) (enforcing a one year non-compete which prohibited any type of employment with a competing business because the defendant was engaging in similar activities.); <u>Roanoke Eng'g Sales Co. v. Rosenbaum</u>, 223 Va. 548, 553, 290 S.E.2d 882, 885 (1982) (non-competition covenant reasonable because employment restriction limited to activities similar to business conducted by former employer).

Not only is it clear that this Agreement only prohibits employment that is the same or similar to the duties performed by Mr. Erice for Studio Center, but Mr. Erice fully admits that he is performing similar duties for his new employer as he performed for Studio Center.  (Answer at ¶ 31).  Under these circumstances, the paragraph 4(b) is functionally reasonable under Virginia law.

### iii.   The Non-Compete is Self-Limiting and Therefore Reasonable in Terms of Geographic Scope

Mr. Erice also argues that the non-competition provision is unenforceable because it lacks a <u>specific</u> provision limiting its geographic scope.  However, in making this argument, Mr. Erice has (1) ignored the plain language of the Agreement, (2) misstated Virginia law, (3) and ignored the high standard for dismissal on a 12(b)(6) motion.

First, Mr. Erice is incorrect in his argument that the non-compete would prohibit him from working in his chosen profession anywhere in the world.  As discussed above, because paragraph 4(b) only prevents Mr. Erice from **competing by** "accepting employment with any *competitor* of the Company," Mr. Erice is free to accept positions anywhere in the world with companies that do not compete with Studio Center.

Due to technological advances, certain businesses are no longer tied to geographic boundaries and cannot define the reach of their business operations by reference to political

23

jurisdictions such as counties, states, or nations, or by a measured radius from a specified point on a map.  Such businesses are able to use the Internet and other technology to provide goods or services to customers in any location and may utilize the talent of employees or contractors located in places other than where the business has a physical office.  The investments these businesses make in marketing, promotion, and customer relations will also not be confined to a particular geographic region.  For a restrictive covenant to be reasonably tailored to the legitimate protectable interests of such a business, the scope of the covenant must be specified by reference to something other than geography, because a geographical limitation would render the covenant meaningless.  See e.g. Market*Access Intern., Inc. v. KMD Media, LLC, 2006 WL 3775935 (Fairfax Cir. Ct. 2006).

Mr. Erice worked for Studio Center as a producer involved with digital audio post production.  In that position, he received various digital audio tracks, voice tracks, and/or video elements, and he would "marry" or "fuse" those elements together into one cohesive, finished product.  With the advent of new digital technologies, however, the need to be near the customer or the voice-over talent no longer exists.  Now, modern technologies allow digital audio production work to be conducted virtually from any location around the globe.  During his deposition, even Mr. Erice readily admitted that there are no geographical limitations to his job. Mr. Erice stated "In this day and age, I mean, **we have no walls anymore.**  I mean, the narrator or the voiceover talent for the show lives in Florida. . . So we just patch him into the session remotely and get the voiceover recorded, and then later in the day we would play him the final audio mix."[5]

---

[5] This quote from Mr. Erice's deposition, although not before the Court, clearly demonstrates that the non-compete cannot be declared overbroad without resorting to facts outside the record to determine if there are "no set of facts" under which each provision could be enforceable.

Indeed, Mr. Erice could service the same customers from anywhere in the world via simple access to the internet and a telephone.  As such, a non-compete agreement that limited Defendant from working, for example, within 100 miles of Studio Center's office would be ineffective.  Defendant could simply operate outside the restricted area and perform the same competitive work with the same competitive effect as he could perform within the restricted area.

Thus, paragraph 4(b) is narrowly tailored to only prohibit Mr. Erice from working in a competing position for companies which actually "compete" with Studio Center. Clearly, there will be many companies around the world which do not compete with Studio Center.  Indeed, this self-limiting "competitive" restriction is a valid way to structure a non-compete under Virginia law, especially in technologically based industries such as Studio Center's.  For example, a Virginia court recently upheld a non-competition provision which, like the provision at issue in this case, did not contain a specific geographic limitation, but only prohibited jobs which would be "in direct competition" with the former employer.  In Market*Access Intern., Inc. v. KMD Media, LLC, 2006 WL 3775935, 4 (Fairfax Cir. Ct. 2006), the court analyzed a one-year non-compete which prohibited a sales representative from "compet[ing] with Company, directly or indirectly in the sale or promotion of products that directly compete with Company's existing publication."   Thus like the case at bar, the non-compete did not contain a specific geographical limitation, but clearly only prohibited direct competition.  The court noted that the lack of such a specific geographic limitation did not make the agreement per se unenforceable, and that the ultimate question under Virginia law is whether the agreement was reasonably tailored to protect a legitimate interest.  Id.  As the Court put it:

> Virginia courts are hesitant to enforce non-competition agreements that essentially prohibit a person from seeking employment in his or her chosen field. For that reason, many non-competition agreements contain geographical provisions limiting the area where the employee is not permitted to seek competing work to the area the business can expect to

25

"reach." *Where a business is regional in scope this is relatively easy, but with the advent of the Internet and the nationalization of everything from products to ideas, this has become substantially more difficult…* While the language of the non-competition agreement at issue clearly does not contain language limiting the geographic scope of the agreement, the language of the agreement *does* limit the duration of the non-compete agreement to one year and limits the prohibited activities to those *in direct competition* with *Homeland Defense Journal.*

The Court went on to hold that that the "direct competition" language appropriately limited the non-compete in functional and geographic terms, and that in combination with the agreement's one-year prohibition, the agreement was not per se unenforceable. Id.; See also Rash v. Hilb, Rogal & Hamilton Co. of Richmond, 251 Va. 281, 286, 467 S.E.2d 791, 794 (1996) (enforcing a non-compete which was geographically unlimited but prohibited the defendant from "competing directly or indirectly" with plaintiff).

Likewise, courts outside of the jurisdiction have addressed similar situations in which a specific geographical limitation would be meaningless.  In GFI Brokers, LLC v. Santana, the United States District Court for the Southern District of New York[6] refused to hold that a non-competition agreement with a worldwide prohibition was geographically invalid, noting that broad geographic restrictions were permissible "where the nature of the business requires that the restriction be unlimited in geographic scope.'"  2008 WL 3166972 at *8 (S.D.N.Y. Aug. 6, 2008). The GFI court justified a worldwide scope in light of expanding technological capabilities by finding that, in situations in which "the employee could conduct his business from anywhere in the world where there is a telephone," a "geographic restriction on the covenants would render them nullities."  Id. (citations and quotations omitted).  Similarly, a specific geographic limitation in the present case would render the non-compete agreement a nullity.

---

[6] Defendant states in his Memorandum in Support of Defendant's Motion to Dismiss that "New York's treatment of restrictive covenants in employer-employee relationships is similar to that of Virginia."  Memorandum, Pg. 4, fn 4.

I-857074.2

Secondly, Mr. Erice also misstates Virginia law by suggesting that a non-compete

agreement that does not contain a specific geographic limitation is per se invalid. As numerous

courts have suggested, a non-compete's temporal, functional and geographical limitations must be

read in combination to see if the provision as a whole (and based on the facts of the case) is

reasonably tailored to protect a legitimate interest.  Despite his assertion that covenants which

lack specific geographic limitations are per se invalid in Virginia, Mr. Erice is unable to point to

any Virginia court that has held a covenant invalid based solely upon a lack of geographic

limitation.  On the other hand, numerous courts have upheld a restrictive covenant despite a lack

of geographic limitation.  See  Market*, 2006 WL at *4 (explaining why the lack of a specific

geographic limitation did not preclude enforcement of the non-compete); Zuccari 42 Va. Cir. at

133 ("Virginia law states that the covenant must be reasonable in time and geographic limitation:

it **does not dictate that there must be a geographic limitation or else the clause is invalid**.);

Leddy,  2000 WL at *3 ("The Plaintiff's theory that, the failure of the non-solicitation clause to

include geographic limitation makes it a world wide restraint and per se unreasonable is not

supported by the case law");  Rash 251 Va. at 286, 467 S.E.2d at 794 (enforcing geographically

unlimited non-compete).

Indeed, in each of the decisions relied upon by Mr. Erice regarding geographic limitations,

the non-competes were held to be overbroad for reasons in addition to the alleged geographic

overbreadth. See Alston Studios v. Lloyd V. Gress & Assoc., 492 F.2d 279, 283 (4th Cir. 1974)

(holding that covenant was invalid because it encompassed activities in which employee was not

engaged); Roto-Die Co., Inc. v. Lesser, 899 F. Supp. 1515, 1520 (W.D. Va. 1995) (holding that

covenant was invalid because it contained no functional limitation on employee's work); Strategic

Resources, Inc. v. Nevin, 2005 WL 3143941 at *3 (E.D. Va. 2005) (holding that covenant was

invalid because it prohibited conduct extended to non-competitive activities); <u>Phoenix</u>, 439 F. Supp. 2d at 521 (holding that covenant was invalid because restraining employee interaction with "prospective customers or clients" was overbroad); <u>Cantol, Inc. v. McDaniel</u>, 2006 WL 1213992 (E.D. Va. 2006) (holding that covenant was invalid because its definition of "competition" was overbroad).

Third and perhaps most importantly, the foregoing discussion demonstrates that there are numerous issues of fact not currently before the Court which are necessary to effectively determine the enforceability of the non-compete.  The enforceability of the non-compete depends on facts related to the technology involved in the business, the scope of Studio Center's business, the ease with which Erice could perform work remotely, and other similar facts.  Under these circumstances, Mr. Erice cannot establish that there are "no possible facts" under which the non-compete could be enforceable.  <u>Higgins</u> 849 F. Supp. at 1117.

Here the non-compete is enforceable based on the combination of the short one-year period of its effect, the narrow functional limitation to duties which Mr. Erice performed for Studio Center, and the self-limiting effect of only applying to entities that actually compete with Studio Center.  Finally because this provision is narrowly tailored to protect Studio Center's confidential and proprietary information as well as its client base, public policy favors its enforcement.  <u>See</u> <u>Meissel</u> 198 Va. at 584, 95 S.E.2d at 191; <u>Shuttleworth</u>, 254 Va. at 498, 493 S.E.2d at 366.

At the very least, Mr. Erice has fallen far short of his 12(b)(6) burden of establishing that there are no set of facts under which paragraph 4(b) could be enforceable, and therefore his Motion to Dismiss Count II should be denied.

**5.      Any Allegedly Unenforceable Provisions Must be Severed from the Agreement, Leaving the Remainder of the Agreement Fully in Effect**

As the foregoing discussion demonstrates, each of the three non-solicitation provisions and the non-competition provision are enforceable under Virginia law.  However, even if Mr. Erice was somehow able to demonstrate that the one or more of the four provisions was unenforceable, the parties agreed that the unenforceable provision(s) would be severed from the Agreement, leaving the remainder of the provisions in place.  The Agreement contains the following "severability" provision:

> 13.  Severability.   If any term, provision, covenant or condition of this Agreement, or the application thereof to any person, place or circumstance, shall be held to be invalid unenforceable or void, the remainder of this Agreement… shall remain in full force and effect. (See Exhibit 1).

Where the parties to an agreement containing restrictive covenants have contractually agreed to severability, Virginia law provides that the court should enforce the intent of the parties, and to completely "sever" any unenforceable provisions while leaving the remainder of the Agreement in effect.  See Roto-Die Co. v. Lesser, 899 F. Supp. 1515 (W.D. Va. 1995) (even though the non-compete portion of the Employment Agreement was found to be overbroad, the Court severed this provision and enforced the remainder of the restrictive covenants); Better Living Components, Inc. v. Coleman, 67 Va. Cir. 221, Albemarle County 2005) ("There is a distinction between severing, where a covenant is excised entirely from the agreement, and 'blue penciling,' where the court rewrites invalid language to make it fit within the bounds of the law. **Although Virginia courts will look to the intent of the parties to determine severability of clauses or provisions**, they will not 'blue pencil' a contract to make it enforceable."); Nida v. Bus. Advisory Sys., Inc., 44 Va. Cir. 487, (Winchester 1998) ("In Virginia, provisions contained in a contract may be severable and enforced separately or excised from the contract, and the

29

remainder of the contract enforced.  Whether contractual provisions are severable is determined from the intention of the parties.").

As in all of the cases cited above, the Agreement in this case manifests the parties' clear intent that, should any individual covenant be found unenforceable, the remainder of the contract should be enforced.  Therefore, Count I of Studio Center's case may not be dismissed unless Mr. Erice is somehow able to prove that there are no set of facts under which any of the three non-solicitation provisions is independently unenforceable.  Likewise, Count II can only be dismissed of paragraph 4(b) is independently unenforceable under any conceivable set of facts.

## IV. CONCLUSION

Because the covenants in this case are not unenforceable (*per se* or otherwise), Studio Center respectfully requests that Mr. Erice's Motion to Dismiss be denied.

Respectfully submitted,

**STUDIO CENTER NEW YORK, LLC**

By: :    */s/*_____

Susan R. Blackman, Esq. (VSB#38496)
David A. Kushner, Esq. (VSB#71173)
Attorney for Studio Center New York, LLC
WILLCOX & SAVAGE, P.C.
One Commercial Place, Suite 1800
Norfolk, Virginia  23510
(757) 628-5500
(757) 628-5566 Fax
sblackman@wilsav.com
dkushner@wilsav.com

30

I-857074.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 20th day of January, 2009, I will hand deliver and electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Brent R. Haden, Esq. (VSB No. 41510)
> BEST LAW FIRM
> Attorney for Anthony Erice
> 300 E. Main Street, Suite 1400
> Norfolk,  Virginia  23510
> Phone: (757) 624-1800
> Fax: (757) 624-1900
> bhaden@bestlex.com

> Charles W. Best, II, Esq. (VSB No. 26559)
> BEST LAW FIRM
> Attorneys for Anthony Erice
> 300 E. Main Street, Suite 1400
> Norfolk, Virginia  23510
> Phone: (757) 624-1800
> Fax: (757) 624-1900
> cwbest@bestlex.com

> /s/ _____
> Susan R. Blackman, Esq. (VSB#38496)
> David A. Kushner, Esq. (VSB#71173)
> Attorneys for Studio Center New York, LLC
> WILLCOX & SAVAGE, P.C.
> One Commercial Place, Suite 1800
> Norfolk, Virginia  23510
> (757) 628-5500
> (757) 628-5566 Fax
> sblackman@wilsav.com
> dkushner@wilsav.com

31

I-857074.2